IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRIAN TUCKER, et al.,

    Plaintiffs,

    v.

NGL EXPRESS, LLC et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:22-CV-3380-TWT

**OPINION AND ORDER**

This is a personal injury case. It is before Plaintiffs Brian Tucker and Megan Tucker's Motion for Leave to Amend [Doc. 115], Proposed Intervenor-Plaintiff Atlantic Specialty Insurance Company's ("Atlantic Specialty") Motion to Intervene [Doc. 111], and Defendants GSA Transport Services LLC ("GSA"), Mustafa Mohamud, and Protective Insurance Company's ("Protective") Motion for Partial Summary Judgment [Doc. 110]. For the reasons set forth below, the Court GRANTS Plaintiffs Brian Tucker and Meagan Tucker's Motion for Leave to Amend [Doc. 115] and Proposed Intervenor-Plaintiff Atlantic Specialty's Motion to Intervene [Doc. 111]. The Court DENIES Defendants GSA, Mohamud, and Protective's Motion for Partial Summary Judgment [Doc. 110].

### I.   Background[1]

This dispute arises from a motor vehicle incident in which Defendant

---

[1] The operative facts on the Motion for Partial Summary Judgment are

Mustafa Mohamud's tractor trailer rear-ended Plaintiffs Brian and Meagan Tucker's tractor trailer, while Mohamud was in the course of his employment with GSA Transport Services LLC. (Defs.' Statement of Undisputed Material Facts ¶¶ 3, 6 [Doc. 110-1]; Pls.' Resp. to Defs.' Statement of Undisputed Material Facts ¶¶ 3, 6 [Doc. 113].) The Tuckers subsequently sued Defendants Mohamud, GSA, and Protective Insurance Company (GSA's insurance provider) for their alleged injuries. The Second Amended Complaint includes claims for negligence; negligence per se; and negligent hiring, retention, and supervision. (2d Am. Compl. ¶¶ 7–9 [Doc. 18].)

The following motions are before the Court: the Plaintiffs' unopposed Motion for Leave to Amend [Doc. 115], Proposed Intervenor-Plaintiff Atlantic Specialty Insurance Company's unopposed Motion to Intervene [Doc. 111], and the Defendants' contested Motion for Partial Summary Judgment [Doc. 110]. The Motion for Partial Summary Judgment chiefly concerns the Tuckers' initial and expert disclosures and whether their supposed delay must be remedied.

## II. Legal Standard

Courts look to Rule 15 to determine whether to grant a motion for leave to amend. When a party is not entitled to amend its pleading as a matter of

---

taken from the Defendants' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

course, it must obtain the opposing party's consent or the court's permission to file an amendment. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) provides that a court should "freely" give leave to amend a pleading "when justice so requires." *Id.* This decision is discretionary, but the Eleventh Circuit has explained that "district courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021).

When requested on a timely motion, a court must permit a party to intervene if that party (1) "is given an unconditional right to intervene by a federal statute" or (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(1)–(2).

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The

burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III. Discussion

#### A. Leave to Amend

The Tuckers request leave to amend to withdraw their claims of negligent training, hiring, and supervision (contained within Count II in ¶¶ 17–18) because "it has become clear that there is no evidentiary support for these claims." (Pl.'s Mot. for Leave to Amend, at 1–2 [Doc. 115].) The motion is unopposed. Pursuant to Rule 15(a)(2), the Court grants leave to amend and will treat the Tuckers' proposed Third Amended Complaint [Doc. 115-1] as the operative complaint going forward.

#### B. Intervention

The Court grants Proposed Intervenor-Plaintiff Atlantic Specialty's unopposed Motion to Intervene, finding the intervention-by-right requirements of Rule 24(a)(2) satisfied. Atlantic Specialty has already paid the Tuckers $178,338.81 for their accident-related injuries pursuant to an insurance agreement, claims subrogation (to substitute itself in place of the Tuckers as to their rights in this action[2]), and seeks reimbursement of its payments to the Tuckers from the Defendants. (Def. Atl. Specialty's Mot. to

---

[2] *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1287 (11th Cir. 2007) (citation omitted).

Intervene, at 1–3 [Doc. 111].) It therefore "claims an interest relating to the . . . transaction that is the subject to the action," and "disposing of the action" will "impede" it from protecting that interest. *See* Fed. R. Civ. P. 24(a)(2). Moreover, no "existing parties adequately represent[s] [Atlantic Specialty's] interest." Fed. R. Civ. P. 24(a)(2). The company's interests are adverse to all other parties: it seeks to act as subrogee against the existing Defendants, recover its payments to the Tuckers from those Defendants, and as a result reduce the judgment awarded to the Tuckers by way of the reimbursement. (Def. Atl. Specialty's Mot. to Intervene, at 4.)

### C. Partial Summary Judgment

The Defendants' Motion seeks summary judgment as to the Tuckers' (1) negligent hiring, retention, and supervision claim, (2) their "improperly disclosed" past medical costs, and (3) their "improperly disclosed" future neck care opinions. (*See generally* Defs.' Mot. for Partial Summ. J. [Doc. 110].) The Court discusses the second and third points below, as the Court has already granted the Tuckers' motion for leave to withdrawal their negligent hiring, retention, and supervision claim. The second point concerns the Plaintiffs' initial disclosures while the third concerns the Plaintiffs' expert disclosures.

The Rules of Federal Civil Procedure govern initial and expert disclosures. Rule 26(a)(1) requires parties to provide initial disclosures containing, among other things, "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to

5

support its claims." Fed. R. Civ. P 26(a)(1)(A)(ii). Rule 26(a)(2) requires parties to disclose "the identity of any witness [they] may use at trial to present evidence."[3] Fed. R. Civ. P 26(a)(2)(A). That Rule also requires experts who are "retained or specially employed to provide expert testimony in the case" to provide a written report containing, among other things, "a complete statement of all opinions the witness." Fed. R. Civ. P. 26(a)(2)(B)(i). Pursuant to Rule 26(e), parties are under an ongoing obligation to supplement their disclosures "in a timely manner" if they are discovered to be "incomplete or incorrect" or "if the additional or corrective information has not otherwise been made known to the other parties." Fed. R. Civ. P. 26(e)(1)(A). A party's failure to properly disclose may result in an order preventing that party from "us[ing] that information or witness to supply evidence on a motion . . . or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court may also, "on motion and after giving an opportunity to be heard," "order payment of . . . attorney's fees, caused by the failure" and "inform the jury of the party's failure." Fed. R. Civ. P. 37(c)(1)(A)–(B).

In their Motion, the Defendants argue that the Tuckers' delayed supplementing their initial and expert disclosures in an attempt to

---

[3] This district's Local Rules also require parties intending to "use the testimony of an expert witness" to disclose the expert "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery." LR 26.2(C), NDGa.

"sandbag[ ]" and hold a "trial by surprise." (Defs.' Mot. for Partial Summ. J., at 21.) According to the Defendants, the Tuckers waited ten and a half months after discovery had closed before (a) increasing their claimed past medical expenses from $76,273.64 to $217,176.12, (Pls.' Am. Initial Disclosures, at 10–11 [Doc. 106]), and (b) disclosing that Dr. Chris Reeves and Dr. Wayne Bruffett would testify about Ms. Tucker's need for future neck care, (*see generally* Pl. Megan Tucker's Am. Expert Disclosures [Doc. 107]). (Defs.' Mot. for Partial Summ. J., at 15–25.) The Defendants assert that the Tuckers knew well in advance that the past medical expenses had substantially increased, and that Dr. Reeves and Dr. Bruffett would be testifying about future neck surgery, though they did not disclose these updates until May 2025. (*See* Defs.' Mot. for Partial Summ. J., at 19, 22–23.) Had the Defendants been properly notified, they supposedly would have retained "medical billing experts to evaluate the reasonable and necessary value of the asserted bills and the causal relatedness of newly revealed treatment," (*id.* at 22), and they would have deposed Dr. Reeves (for the second time) and Dr. Bruffett (for the first time), (*see* Reply Br. in Supp. of Defs.' Mot. for Partial Summ. J., at 5, 7 [Doc. 116]). For these reasons, the Defendants seek summary judgment as to the damages claimed from the additional past medical treatment and future neck treatment.

  The Tuckers respond that the Defendants' requested remedy is "extreme" and that other remedies such as re-opening discovery would be more reasonable. (*See* Pls.' Resp. Br. in Opp'n to Defs.' Mot. for Partial Summ. J., at

7

8 [Doc. 114].) Regarding past medical costs, the Tuckers claim they updated their disclosures as was reasonably possible given that they required substantial medical care and that it has been difficult to track down all the relevant documentation, which is spread across three states and nineteen facilities. (*Id.* at 2.) Regarding future neck care, they argue that the Defendants did not object on the record to Dr. Reeves's deposition testimony on the subject, (*id.* at 3–4), and suggest that their May 2025 disclosure of Dr. Reeves's treating physician status was not overly delayed as he only began treating Ms. Tucker in September 2024, (*id.* at 6, 8). The Tuckers further argue that they disclosed their intention to rely on Dr. Bruffett's future neck care opinions in their prior 2023 supplemental disclosures and that it was the Defendants' own decision not to depose him at the time. (*See id.* at 3.)

Ultimately, the Court finds that the Tuckers have not reasonably justified their delay regarding the medical records or Dr. Reeves's neck care opinions, nor would the delay be harmless if not remedied by the Court. The Court walks through these findings below, before concluding that re-opening discovery, awarding attorney's fees, and informing the jury are appropriate remedies.

### 1. Past Medical Bills

The Tuckers provided initial damage estimates based on past medical bills in their October 2022 initial disclosures and later supplemented those estimates in May 2023, but they did not further supplement those estimates

8

until May 2025. The Tuckers' May 2025 supplement increased the total amount of past medical bills by approximately 280% (or $140,902.48). (*See* Defs.' Mot. for Partial Summ. J., at 22.) Discovery had closed in July 2024.

The Tuckers did not timely supplement their damages estimates as to medical records they possessed. While the Tuckers appear to have received supplemental records in March 2025 from certain healthcare providers, they apparently received other supplemental records much earlier. For example, in one email exchange from March 2025, the Plaintiffs' counsel confirmed she had possessed medical records for "Athletico" and "Excel" since November 2024, though she had yet to file supplemental disclosures for them. The Defendants point to another medical statement from the University of Arkansas for Medical Sciences that the Tuckers appear to have similarly received in November 2024 for treatment ending in June 2024. (*See* Pls.' Resp. to Defs.' Statement of Undisputed Material Facts, Ex. 4, at 2, 12 [Doc. 113-4].) The Tuckers provided other records that also suggest a receipt date in or around October 2024, though the dates of receipt and treatment are less clear here. (*See* Pls.' Resp. to Defs.' Statement of Undisputed Material Facts, Ex. 5, at 40–56 [Doc. 113-6].) Moreover, between 2023 and 2025, the Defendants had repeatedly requested that the Tuckers update their initial disclosures with total claimed damages. (*See, e.g.*, Defs.' Mot. for Partial Summ. J., Ex. H-1, at 4–5 [Doc. 110-12] ("[A] majority of your client's discovery responses itemizing damages say 'TBD.' . . . [D]iscovery is closed and you have not supplemented

9

any of those responses. Please supplement those responses . . ."); Defs.' Mot. for Partial Summ. J., Ex. H-2, at 2 [Doc. 110-13]; Pls.' Resp. to Defs.' Statement of Undisputed Material Facts, Ex. 7, at 2 [Doc. 113-7].)

The prejudice to the Defendants is magnified not only because the supplement came about six months after the Tuckers reportedly received many of the bills (and about a year after many of the treatments had concluded), but also because the discovery period closed in July 2024. The Defendants are therefore unable to retain experts to assess "the reasonable and necessary value of the asserted bills" and "the causal relatedness of the newly-revealed treatment." (*See* Defs.' Mot. for Partial Summ. J., at 22.) This is especially pertinent because (a) the supplemental disclosures apparently include damages for Plaintiff Megan Tucker's treatment for a fall that occurred after the motor vehicle incident and (b) the parties dispute the relevancy of those records. (*See* Reply Br. in Supp. of Defs.' Mot. for Partial Summ. J., at 10–11 & n.3; *see also* Pls.' Resp. to Defs.' Statement of Undisputed Material Facts, Ex. 5, at 4–5 (containing an email exchange from March 2025 in which defense counsel inquires as to whether treatment records for the fall are relevant to the motor vehicle incident, with no apparent response).)

The Court is sympathetic to the Tuckers and the cumbersome process of collecting medical bills, but it does not excuse their failure to timely supplement the disclosures as they learned about various treatments and worked to track down the corresponding bills. *See* Fed. R. Civ. P. 26(e)(1)(A).

### 2. Future Neck Care Opinions

The Federal Rules provide for different expert disclosure obligations depending on whether a witness is "retained or specifically employed to provide expert testimony." *See* Fed. R. Civ. P. 26(a)(2)(B)–(C). Experts who are "retained or specifically employed to provide expert testimony" must provide a report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P 26(a)(2)(B)(i). For experts who are not so retained or employed, the Federal Rules do not require an expert report, and a party need only disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P 26(a)(2)(C). "[W]hether a doctor is retained (or not) depends on whether she was hired to testify or to treat." *Cedant v. United States*, 75 F.4th 1314, 1326 (11th Cir. 2023). Treating physicians typically fall under the category of experts that are not "retained or specially employed to provide expert testimony," as they are "first hired by their patients to treat rather than to testify." *Id.* at 1324. Regardless of whether a doctor is an expert hired to treat or testify, a party seeking to use the doctor's testimony at trial is still subject to Rule 26(e)'s ongoing obligation to supplement the disclosures and reports. Fed. R. Civ. P. 26(a)(2)(E); Fed. R. Civ. P 26(e).

With these rules in mind, the Court turns to Dr. Bruffett's and Dr. Reeves's opinions regarding future neck care. Regarding Dr. Bruffett, the

11

Court finds that the Tuckers properly disclosed him and his opinions pursuant to Rule 26(a)(2)(C). The Tuckers first disclosed Dr. Bruffett as Ms. Tucker's treating physician in May 2023. (Pl. Megan Tucker's 1st Suppl. Resps. ¶ 28 [Doc. 110-9].) They noted that Dr. Bruffett would testify regarding Ms. Tucker's lumbar spine as well as her "ongoing neck pain" caused by the collision, which "has not been fully treated to date" and "will need additional treatment." (*Id.*) The Tuckers' May 2025 supplemental expert disclosures notify the Defendants of substantially the same type of testimony from Dr. Bruffett. (*See* Pls.' Am. Expert Disclosures, at 1–3.) While the Defendants claim the Tuckers did not disclose that Dr. Bruffett would be testifying as to Ms. Tucker's future neck surgery, (Reply Br. in Supp. of Defs.' Mot. for Partial Summ. J., at 6), the Tuckers original and supplemental expert disclosures are sufficient for the Court to find otherwise. Rule 26(a)(2)(C) creates a low bar for treating physicians, requiring parties to disclose only the "subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." *See* Fed. R. Civ. P. 26(a)(2)(C). The Tuckers met that bar, notwithstanding the fact that the Defendants point to one of Dr. Bruffett's medical records in which he states he "would not recommend any surgery on her cervical spine." (Defs.' Mot. for Partial Summ. J., Ex. F, at 2 [Doc. 110-10].) As the Tuckers explain, Ms. Tucker's "medical treatment is ongoing, so Dr. Bruffett's decisions as to future medical care needed is subject to change." (*See* Pls.' Resp. Br. in Opp'n to Defs.

12

Mot. for Partial Summ. J., at 10.)

Regarding Dr. Reeves, the Court finds that the Tuckers did not properly disclose him and his opinions pursuant to Rule 26(a)(2)(B). The Court begins with the timeline of events, which is more complicated than that of Dr. Bruffett. The Plaintiffs disclosed Dr. Reeves as an independent medical examiner ("IME") in October 2022. (Defs.' Mot. for Partial Summ. J., at 17.) Dr. Reeves later provided an expert report that summarizes Ms. Tucker's imaging and medical records, (Defs.' Mot. for Partial Summ. J., Ex. 1 ("IME Expert Report"), at 3–9 [Doc. 110-7]), summarizes his physical examination of Ms. Tucker,[4] (*id.* at 9), and then opines on treatment to her lumbar spine, (*id.* at 10–11).[5] Although his summary does mention her reported neck pain and cervical spine, Dr. Reeves does not opine on the need for any future neck care as a result of the incident. (*Id.* at 11–12 (containing his opinions in the "Questions" section); *see also* Dr. Reeves Dep. at 40–41, [Doc. 113-1] ("[T]hey didn't ask me any questions about the cervical spine [(i.e., neck)], so I didn't give any opinions about treatment . . .").)

---

[4] Dr. Reeves's summary of his physical examination of Ms. Tucker is contained on page nine of his IME report, though his "Physical Examination" header was accidentally subsumed within the summary of Dr. Bruffett's July 2022 examination. (*See* Dr. Chris Reeves Dep. at 21:9–14 [Doc. 113-1].)

[5] The parties also refer to a recording of Dr. Reeves's medical examination. The Tuckers reported that they mailed a CD containing the recording to the Court. (*See* Pls.' Resp. to Defs.' Statement of Undisputed Material Facts, Ex. 2 [Doc. 113-2].) While the Court need not rely on the recording to reach its conclusions, the Court notes that the CD has not yet been entered into the record, as a notice of filing electronic media has not been filed.

13

In October 2023, the parties took a trial deposition of Dr. Reeves. (*See generally* Reeves Dep.) Despite the absence of opinions in Dr. Reeves's IME report regarding future care for Ms. Tucker's neck, the Plaintiffs questioned him about—and Dr. Reeves testified about—Ms. Tucker's need for future neck care. (Reeves Dep. at 43:13–52:24.) The Defendants objected at the time. (Reeves Dep. at 41:9–15, 50:23–24, 51:11.) Discovery then closed in July 2024.

In May 2025, the Plaintiffs supplemented their expert disclosures. (*See generally* Pl. Megan Tucker's Not. of Am. Expert Disclosure [Doc. 107]; Pl. Brian Tucker's Not. of Am. Expert Disclosure [Doc. 108].) As relevant here, they notified the Defendants that Dr. Reeves has since become Ms. Tucker's treating physician and will now be opining on her need for future neck surgery and that Dr. Bruffett will also be opining on that same need. (*See generally* Pls.' Am. Expert Disclosures.)

As an initial matter, Dr. Reeves was subject to Rule 26(a)(2)(B)'s expert report requirements—not Rule 26(a)(2)(C)'s more lenient disclosure requirements—when he became an IME in this case. Although Dr. Reeves was not compensated or "retained" by the Tuckers, Rule 26(a)(2)(B) required him to submit a written report because he was "specially employed to provide expert testimony" and not "to treat." *See Cedant*, 75 F.4th at 1320. As explained above, the Tuckers had an obligation to ensure the report contained "a complete statement of all opinions the witness will express and the basis and reasons for them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i).

The Tuckers improperly disclosed Dr. Reeves and his opinions. Dr. Reeves's expert report did not opine on Ms. Tucker's need for future neck care, which Dr. Reeves admitted himself in his deposition. (IME Expert Report, at 11–12; Reeves Dep. at 40:25–41:2.) However, the Plaintiffs' line of questioning during Dr. Reeves's deposition and the testimony they elicited from him suggest that they intended to rely on his opinions regarding Ms. Tucker's need for future neck care, including potentially surgery. The Tuckers did not supplement Dr. Reeves's report at any point after the deposition, despite the Defendants objections and Dr. Reeves's acknowledgement that he needed to update his report. (*See* Reeves Dep. at 41:9–15; 50:23–24; 51:11 (regarding the Defendants' objections); *id.* at 41:16–17 ("I will make sure all my findings are listed in the report.").) Rather, for the first time in May 2025, the Tuckers disclosed that Dr. Reeves would testify as to Ms. Tucker's future neck care and that he had become Ms. Tucker's treating physician. But this disclosure was improper and untimely. The Tuckers should have filed a supplemental expert disclosure soon after Dr. Reeves's deposition, when it became known that his report did not contain the neck care opinions he expressed in his deposition.

This delay is not justified or harmless. The Tuckers offer no justification in their brief for their failure to supplement Dr. Reeves's report and disclosures. The Tuckers cannot now claim that Dr. Reeves's new status as a treating physician makes or made him immune to Rule 26(a)(2)(B)'s report requirements and Rule 26(e)'s supplement requirements. The Defendants

15

have already been prejudiced because Dr. Reeves was deposed before his full opinions were provided in a report. *See* Fed. R. Civ. P. 26(b)(4)(A) ("If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.") The discovery period is now closed, so the Defendants cannot seek another deposition or otherwise hire an expert to rebut Dr. Reeves's opinions. And this is to say nothing about any prejudice potentially caused by the Tuckers' delayed disclosure of Dr. Reeves's status as a treating physician.

### 3. Remedy

Although the Tuckers failed to timely supplement their initial disclosures (as to past medical costs) and expert disclosures (as to Dr. Reeves), the Court denies the Defendants' Motion for Partial Summary Judgment, declining to exclude the newly supplemented records and opinions at this time. The Court instead opts to re-open and extend discovery for ninety days from the date of this Order. The Court finds this remedy proper given the complicated nature of tracking the Tuckers' ongoing health, treatments, and bills and the fact that the costs and records for certain treatments remain outstanding. (*See* Pls.' Suppl. Initial Disclosures, at 11–12 (listing about two dozen health providers, and noting "TBD" for the "Amount Billed" category for two providers).) The Court will additionally allow the Defendants to inform the jury of the Plaintiffs delay and hereby orders the Tuckers and their attorneys to pay the Defendants' reasonable attorney's fees as to the improper disclosure

arguments raised in the Defendants' Motion for Partial Summary Judgment.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs Brian Tucker and Megan Tucker's Motion for Leave to Amend [Doc. 115] and Proposed Intervenor-Plaintiff Atlantic Specialty Insurance Company's Motion to Intervene [Doc. 111]. The Clerk is DIRECTED to docket the Plaintiffs' proposed Third Amended Complaint [Doc. 115-1] as the operative Complaint and to docket Intervenor-Plaintiff Atlantic Specialty's proposed Complaint and Cross-Claim [Doc. 111-2]. The Court additionally DENIES Defendants GSA Transport Services LLC, Mustafa Mohamud, and Protective Insurance Company's Motion for Partial Summary Judgment [Doc. 110]. The Defendants are DIRECTED to file a properly supported motion for attorney's fees within 14 days of the date of this Order.

SO ORDERED, this ___3rd___ day of October, 2025.

*Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge